**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGELIZ E. BRUNO CEDENO,**

**Plaintiff,**

**v.** **CASE NO: 6:25-cv-02046-GAP-DCI**

**WALT DISNEY PARKS AND RESORTS U.S., INC.,**

**Defendant.**
______________________________________/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANGELIZ E. BRUNO CEDENO, (hereinafter "Plaintiff" or "Ms. Bruno Cedeno"), by and through the undersigned counsel, hereby sues Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. (hereinafter "Defendant," "Disney," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her current employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and

privileges of her employment because of her disability, and retaliated against her for requesting reasonable accommodations and engaging in protected activity in violation of her rights under the ADA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§

1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Orange County, Florida.

**PARTIES**

8. Plaintiff is ANGELIZ E. BRUNO CEDENO, a 29-year-old female who has been diagnosed with light sensitivity from postpartum eye conditions and astigmatism requiring prescription medical devices for vision-related accommodation.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability under the ADA.

10. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA.

12. The Defendant, WALT DISNEY PARKS AND RESORTS U.S.,

INC., is a corporation with its principal place of business located at 1180 Seven Seas Dr, Lake Buena Vista, FL 32830.

13. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Orange County, Florida, operating theme parks and entertainment facilities where they employed Plaintiff as a Security Host in their Security Department.

14. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to the ADA, employing fifteen (15) or more employees.

15. Accordingly, Defendant is liable under the ADA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17. On June 23, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability

discrimination and retaliation.

18. On September 8, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 510-2025-10523) against Defendant.

19. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

20. Plaintiff ANGELIZ E. BRUNO CEDENO began her employment with Defendant WALT DISNEY PARKS AND RESORTS U.S., INC. on July 29, 2022, as a Security Host in the Security Department at Walt Disney World Resort in Orlando, Florida.

21. Throughout her employment, Plaintiff has been a dedicated and reliable employee, earning $22.00 per hour and maintaining good standing with her current supervisor, Eileen Underwood.

22. Plaintiff suffers from light sensitivity caused by postpartum eye conditions and astigmatism, which constitutes a disability under the ADA as it substantially limits her major life activity of seeing.

23. To accommodate her disability, Plaintiff's physician prescribed Meta smart glasses as a medical device to assist with her vision-related

accommodation needs.

24. On June 30, 2025, Doctor Thai completed the required accommodation forms confirming that Plaintiff's prescription glasses were medically necessary for her disability.

25. Prior to the discriminatory conduct described herein, Plaintiff wore her medically prescribed Meta smart glasses to work without incident or complaint from management.

26. On June 5, 2025, Plaintiff was subjected to her first instance of discriminatory treatment when manager Tim Isaacs pulled her into a closed-door meeting without union representation, in violation of her Weingarten rights.

27. During this meeting, Tim Isaacs and Joel Torres were present and questioned Plaintiff about her medical device, pressuring her to discuss private medical information including lens numbers and prescriptions.

28. The meeting was conducted in a hostile manner and continued publicly in the Screening area in front of Plaintiff's peers, causing her embarrassment and humiliation.

29. No written policy was provided to Plaintiff prohibiting the use of her medically prescribed device, and management could not cite any

specific rule or regulation that her glasses violated.

30. Between June 6-10, 2025, Plaintiff contacted union representatives James Pirson and Christopher M. Kobelt via email, requesting policy clarification and expressing concerns about being questioned regarding her health and the unequal enforcement of policies.

31. On June 26, 2025, Plaintiff was subjected to another retaliatory meeting with Tim Isaacs, Scott Boothroyd, and union representative James Pirson, where she was pressured to admit "non-compliance" despite following written Disney policy.

32. During this meeting, Tim Isaacs mentioned his "Law Enforcement background" in an intimidating manner, and Plaintiff experienced coercion, intimidation, and hostile treatment from management.

33. The union representative assisted Plaintiff in writing a statement confirming her policy compliance, but management continued to treat her in a discriminatory manner.

34. On June 27, 2025, Plaintiff submitted a formal request for medical accommodation and policy clarification to Defendant's Employee Relations department.

35. On July 9, 2025, Employee Relations representative Emma Bramer offered Plaintiff only relocation to a different position or forced medical leave as "accommodations," neither of which would address her disability.

36. Plaintiff explained that these proposed "accommodations" would cause her financial harm and loss of seniority, and would not provide reasonable accommodation for her disability.

37. On July 15, 2025, in an attempt to resolve the matter amicably, Plaintiff emailed Emma Bramer offering to temporarily wear non-prescription glasses while awaiting policy guidance from Defendant.

38. On July 16, 2025, Plaintiff emailed Vice President Linda Reid about the mistreatment and unequal enforcement she was experiencing, seeking assistance from upper management.

39. Linda Reid responded within an hour, copying HR personnel and confirming that no existing policy prohibited Plaintiff's medical device, contradicting the treatment Plaintiff had received from lower-level management.

40. On July 18, 2025, Plaintiff instructed Emma Bramer to hold off on accommodations until HR reviewed the policy with Vice President Linda

Reid, demonstrating that Defendant was aware no policy existed.

41. On July 22, 2025, Emma Bramer issued a permanent medical restriction without Plaintiff's consent, violating the doctor's instructions and exceeding the scope of the medical accommodation request.

42. Plaintiff immediately objected via email to HR, expressing that she had not consented to permanent restrictions and that this action violated her doctor's recommendations.

43. On July 23, 2025, Emma Bramer called Plaintiff with a noticeably changed tone, shifting from acting as an advocate to identifying herself as a "leader" and arranging a meeting with Senior Manager without explaining why she had not helped with policy clarification.

44. On July 24, 2025, Plaintiff attended a meeting with Eileen Underwood, Joel Torres, and union representative James Pirson, where she was informed of an "executive decision" banning smart glasses "effective immediately."

45. During this meeting, no formal written policy was shown to Plaintiff, and Eileen Underwood refused to identify who made the "executive decision," demonstrating the arbitrary nature of the discrimination.

46. This "executive decision" directly contradicted Vice President Linda Reid's email and prior HR guidance, showing inconsistent and discriminatory treatment.

47. The meeting caused Plaintiff severe emotional distress, and she left crying and remained in the Woody's parking lot for an hour. Due to her emotional state, she was relieved of her duties early, as confirmed by Union Representative James Pirson and Tim Isaacs, who approved the Relief of Service (ROS).

48. On August 2, 2025, Plaintiff was pulled aside from her assigned work location at Contemporary Screening without prior notice by Scott Boothroyd, who pressured her about the July 24th meeting.

49. When Plaintiff refused to answer questions about the meeting, Scott Boothroyd called her "rude," demonstrating continued retaliatory behavior, while union representative Chris Kobelt was present but failed to intervene.

50. On August 8, 2025, Defendant's leaders Scott Boothroyd and Tiffany Francis arranged for a union representative to clock in early specifically to facilitate disciplinary action against Plaintiff.

51. When asked directly, Scott Boothroyd confirmed that no formal

policy existed prohibiting Plaintiff's medical device, yet disciplinary action proceeded anyway.

52. Plaintiff declined to sign the disciplinary action due to the retaliatory nature and lack of any supporting policy, with union representative Chris Kobelt only noting "Declined To Sign."

53. On August 10, 2025, during a meeting with HR representative Simrat Sodhi and union representative Kris Tomich at the Contemporary Resort, Plaintiff was subjected to further discriminatory and retaliatory conduct.

54. Kris Tomich threatened Plaintiff with termination if she pursued legal action, citing at-will employment, and suggested humiliating alternatives including asking social media followers for money, setting up a GoFundMe account, or buying "dummy glasses on Amazon."

55. Kris Tomich physically grabbed Plaintiff's glasses and personal notebook without permission and denied her right to pursue a grievance through proper channels.

56. During this meeting, Kris Tomich produced Plaintiff's employment record without her consent in an apparent attempt to discredit her, demonstrating breach of duty of fair representation.

57. A coworker's text message confirmed that "Managers are working on updating the policy to not include Meta or smart glasses," proving that no policy existed at the time of Plaintiff's discipline.

58. On September 30, 2025, fellow Cast Member Ron Andries was falsely disciplined for wearing smart glasses, with managers claiming a "guest complaint" about recording but conducting no investigation, showing a pattern of discriminatory enforcement.

59. On October 14, 2025, during a guest suicide investigation at the Contemporary Resort, Security leaders openly discussed Plaintiff's Meta glasses situation during an active crime scene, using the tragic event as an opportunity to gossip and influence others against ADA-approved devices.

60. This behavior during such a sensitive situation was extremely inappropriate and caused Plaintiff additional distress, demonstrating management's continued focus on discriminating against her.

61. On October 19, 2025, Security Coordinator Imeray D. Padron confirmed to Plaintiff that other Cast Members wear Meta glasses without punishment and advised her to consider legal action.

62. This confirmation demonstrated the discriminatory and unequal enforcement of policies specifically targeting Plaintiff due to her disability

and protected activity.

63. Plaintiff became visibly upset upon learning of the unequal treatment and accidentally reported to the wrong post location due to emotional overwhelm, with leader Tiffany noticing her continued visible distress.

64. Throughout this ordeal, Defendant's employees routinely wear smart watches and other electronic devices for both medical and non-medical purposes without restriction, demonstrating that Plaintiff's treatment was based on discrimination and retaliation.

65. Defendant's conduct has caused Plaintiff significant anxiety, emotional distress, physical symptoms including headaches and fatigue, and has impacted her ability to breastfeed, forcing early cessation when her body stopped producing milk due to stress.

66. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered damages including loss of trust, career damage, emotional distress, and financial impact from legal consultation expenses and diminished job performance.

## COUNT I
## DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE (ADA) 42 U.S.C. § 12112(b)(5)(A)

67. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68. Plaintiff is an individual with a disability within the meaning of the ADA.

69. Specifically, Plaintiff has been diagnosed with light sensitivity caused by postpartum eye conditions and astigmatism, which substantially limits the major life activity of seeing.

70. Plaintiff's disability materially affects her ability to see and function in work environments with bright, variable, and high-glare lighting conditions, including conditions commonly encountered while performing security duties at Walt Disney World Resort.

71. Without her medically prescribed eyewear, Plaintiff experiences significant pain, headaches, visual distortion, and/or an inability to maintain visual clarity, creating safety concerns and impairing her ability to perform tasks requiring continuous observation, mobility, and situational awareness.

72. Plaintiff is a qualified individual under the ADA because she can perform the essential functions of her position, with a reasonable accommodation.

73. Plaintiff has been employed as a Security Host in Defendant's Security Department since July 29, 2022, and throughout her employment she has been a dedicated and reliable employee, earning approximately $22.00 per hour and maintaining good standing with her current supervisor, Eileen Underwood.

74. Plaintiff successfully performed her job duties when permitted to use her medically prescribed eyewear to mitigate the functional limitations caused by her disability.

75. Plaintiff's essential job functions include monitoring guest screening areas, maintaining security posture, responding to incidents, and ensuring the safety of guests and staff—tasks requiring accurate vision, sustained attention, and the ability to assess conditions in rapidly changing lighting.

76. To accommodate her disability, Plaintiff's physician prescribed Meta smart glasses as a medically necessary device to assist with Plaintiff's vision-related accommodation needs.

77. On June 30, 2025, Doctor Thai completed Defendant's required accommodation forms confirming that Plaintiff's prescription glasses were medically necessary for her disability.

78. Prior to Defendant's discriminatory conduct, Plaintiff wore her medically prescribed Meta smart glasses to work without incident or complaint from management.

79. Plaintiff requested a reasonable accommodation for her disability.

80. On June 27, 2025, Plaintiff submitted a formal request for medical accommodation and policy clarification to Defendant's Employee Relations department.

81. Plaintiff provided Defendant with medical documentation supporting the accommodation request, including the June 30, 2025 forms confirming the medical necessity of Plaintiff's prescription device.

82. Plaintiff's requested accommodation—wearing her physician-prescribed Meta smart glasses at work—was reasonable and would have enabled Plaintiff to perform the essential functions of her job.

83. The accommodation also would not have imposed an undue hardship on Defendant, particularly where:

a. Plaintiff had previously worn the device at work without issue;

b. Defendant's leadership acknowledged there was no written policy prohibiting the device; and

c. Defendant permitted employees to wear other electronic devices (including smart watches and other wearable devices) without restriction.

84. Defendant failed and refused to provide a reasonable accommodation.

85. On July 9, 2025, Employee Relations representative Emma Bramer offered Plaintiff only relocation to a different position or forced medical leave as purported "accommodations," neither of which reasonably addressed Plaintiff's disability-related limitations, and both of which would have caused Plaintiff financial harm and loss of seniority.

86. Plaintiff communicated that these options were not reasonable accommodations for her disability and would impose unnecessary adverse consequences.

87. Defendant further failed to engage in the interactive process in good faith. Rather than collaboratively identifying an effective

accommodation consistent with Plaintiff's medical documentation, Defendant:

a. demanded intrusive disclosure of Plaintiff's private medical information;

b. repeatedly pressured Plaintiff to admit non-compliance despite her adherence to existing written policy;

c. refused to provide or identify any written policy purportedly prohibiting the accommodation; and

d. unilaterally imposed restrictions and discipline without providing any effective alternative accommodation.

88. On July 16, 2025, Plaintiff sought assistance from upper management by emailing Vice President Linda Reid about the mistreatment and unequal enforcement.

89. Vice President Reid responded promptly and confirmed that no existing policy prohibited Plaintiff's medical device, contradicting the position taken by lower-level management.

90. Despite this acknowledgment, Defendant continued to deny Plaintiff's requested accommodation and, on July 22, 2025, issued a permanent medical restriction without Plaintiff's consent, which Plaintiff

immediately objected to because it violated her doctor's instructions and exceeded the scope of the requested accommodation.

91. On July 24, 2025, Defendant informed Plaintiff that an "executive decision" banned smart glasses "effective immediately," without providing any written policy and without offering Plaintiff any effective alternative accommodation that would enable her to perform her job with her disability.

92. Defendant's actions constituted a denial of Plaintiff's requested accommodation and a constructive denial of accommodation by forcing Plaintiff to choose between her medically necessary device and continued performance of her job without penalty.

93. Defendant's failure to accommodate Plaintiff violated the ADA, including 42 U.S.C. § 12112(b)(5)(A).

94. Plaintiff's medically prescribed device could be configured and used in a manner that did not record guests or confidential information, and Defendant could have implemented reasonable safeguards (including written guidance, inspections, disabling features where feasible, or limiting use to specific posts) rather than denying the accommodation entirely.

95. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered damages, including lost wages and

benefits, emotional distress, anxiety, physical symptoms including headaches and fatigue, loss of breastfeeding capacity due to stress, reputational harm, and other losses.

**WHEREFORE**, the Plaintiff, ANGELIZ E. BRUNO CEDENO, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA, 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, by failing to accommodate Plaintiff's disability;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's failure to accommodate her disability, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's failure to accommodate her disability pursuant to the ADA;

D. Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT II**
**DISABILITY DISCRIMINATION – DISPARATE TREATMENT**
**(ADA) 42 U.S.C. § 12112(a)**

96. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 66 of this

Complaint as though fully set forth herein..

97. Plaintiff is an individual with a disability within the meaning of the ADA.

98. Specifically, Plaintiff has been diagnosed with light sensitivity caused by postpartum eye conditions and astigmatism, which substantially limits the major life activity of seeing.

99. Plaintiff's impairment materially affects her ability to see and function in work environments with bright and variable lighting conditions.

100. Without her prescribed eyewear and/or accommodation, Plaintiff experiences severe glare sensitivity, headaches, visual distortion, and difficulty maintaining visual clarity, which impacts both her daily functioning and safe performance of job duties requiring sustained observation and situational awareness.

101. Plaintiff was, at all relevant times, a qualified individual under the ADA who could perform the essential functions of her position with or without reasonable accommodation.

102. Plaintiff has been employed as a Security Host in the Security Department at Walt Disney World Resort since July 29, 2022, has remained in good standing, and has maintained a positive work relationship with her

current supervisor, Eileen Underwood.

103. Plaintiff successfully performed her job duties when permitted to use her medically prescribed Meta smart glasses, which were prescribed to mitigate the functional limitations caused by her disability.

104. Plaintiff performed her essential duties—including maintaining security posture, screening and monitoring guest areas, responding to incidents, and ensuring guest and staff safety—without performance deficiencies when permitted to use her prescribed eyewear.

105. Defendant subjected Plaintiff to adverse employment actions because of her disability and/or because of her request for accommodation.

106. On June 5, 2025, Defendant's managers—including Tim Isaacs and Joel Torres—subjected Plaintiff to hostile and intrusive questioning about her medically necessary device, including pressuring Plaintiff to disclose private medical information regarding her prescription and lens details.

107. Defendant's management conducted the meeting in a hostile manner, continued the discussion publicly in the Screening area in front of Plaintiff's peers, and caused Plaintiff embarrassment and humiliation.

108. Defendant's management could not cite any written policy

prohibiting Plaintiff's medically prescribed device and did not provide Plaintiff with any written policy to justify its scrutiny or restrictions.

109. On June 26, 2025, Defendant again subjected Plaintiff to a hostile and intimidating meeting, pressuring her to admit "non-compliance" despite Plaintiff's adherence to written Disney policy and despite Defendant's inability to identify a policy prohibiting the device.

110. On July 24, 2025, Defendant implemented an arbitrary "executive decision" banning smart glasses "effective immediately," including Plaintiff's medically prescribed device, without producing any written policy and without applying a consistent or nondiscriminatory standard.

111. The July 24, 2025 "executive decision" contradicted prior communications acknowledging that no existing policy prohibited Plaintiff's medical device and demonstrates inconsistent and discriminatory treatment.

112. Defendant further subjected Plaintiff to discipline and adverse treatment, including, but not limited to:

a. issuing a "permanent medical restriction" without Plaintiff's consent;

b. pulling Plaintiff aside and pressuring her about prior meetings;

c. calling Plaintiff "rude" for refusing to answer questions about protected matters; and

d. initiating discipline on August 8, 2025 despite acknowledging no formal policy existed prohibiting Plaintiff's medical device.

113. Plaintiff was treated less favorably than similarly situated employees without disabilities and/or employees who did not request accommodation.

114. Upon information and belief, Defendant permitted other Cast Members to wear Meta smart glasses without punishment, and Security Coordinator Imeray D. Padron confirmed to Plaintiff on October 19, 2025 that other Cast Members wear Meta glasses without discipline.

115. Defendant's employees routinely wear smart watches and other electronic devices for both medical and non-medical purposes without restriction, yet Defendant targeted Plaintiff's medically necessary device for scrutiny, discipline, and restriction.

116. Defendant's unequal enforcement, adverse actions, hostility, and

discipline toward Plaintiff were motivated by Plaintiff's disability and/or by her disability-related accommodation needs, in violation of 42 U.S.C. § 12112(a).

117. Defendant's actions constitute unlawful disability discrimination under the ADA.

118. Defendant's stated reason for its adverse actions—an alleged policy against smart glasses—was pretextual because management repeatedly admitted no written policy existed at the time of Plaintiff's discipline, and coworkers confirmed that leadership was 'updating' the policy after the fact to exclude Meta or smart glasses.

119. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages and benefits, emotional distress, anxiety, physical symptoms including headaches and fatigue, reputational and career harm, and other losses.

WHEREFORE, the Plaintiff, ANGELIZ E. BRUNO CEDENO, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Enter judgment in favor of Plaintiff and declare that Defendant has violated the ADA, 42 U.S.C. § 12101 et seq., as amended, and its implementing regulations, by subjecting Plaintiff to disparate treatment and adverse employment actions because of her disability and/or because of her request for reasonable accommodation, in violation of 42 U.S.C. § 12112(a);

B. Award sufficient remedial relief to make Plaintiff whole for the losses she has suffered because of Defendant's unlawful disability discrimination, including, but not limited to, reinstatement (if applicable), front pay in lieu of reinstatement, full back pay with interest, restoration of lost benefits (including pension and related benefits), and any other appropriate non-discriminatory measures to overcome the effects of Defendant's discriminatory conduct;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's disability discrimination, including emotional distress, pain and suffering, inconvenience, mental anguish, and

loss of enjoyment of life, as permitted by the ADA;

D. Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT III**
**RETALIATION**
**(ADA) 42 U.S.C. § 12203(a)**

120. At all times material, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

121. Plaintiff engaged in statutorily protected activity under the ADA, including but not limited to:

a. requesting a reasonable accommodation for her disability, including her medically prescribed Meta smart glasses;

b. submitting formal medical documentation supporting her accommodation request on or about June 27, 2025;

c. communicating concerns about unequal enforcement of policies and discriminatory treatment to management and union representatives;

d. opposing discriminatory practices; and

e. filing a Charge of Discrimination with the EEOC on June 23, 2025.

122. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from engaging in protected activity, including but not limited to:

a. hostile, intimidating, and coercive meetings concerning Plaintiff's disability-related accommodation and medical device;

b. pressure to disclose private medical information and repeated accusations of "non-compliance" despite Plaintiff's adherence to written policy;

c. implementation of an arbitrary "executive decision"

banning Plaintiff's medically necessary device "effective immediately";

d. issuance of disciplinary action notwithstanding Defendant's acknowledgement that no formal written policy prohibited Plaintiff's medical device;

e. increased scrutiny and continued harassment;

f. threats of termination and other intimidating conduct in response to Plaintiff's complaints and legal rights; and

g. continued retaliatory treatment in the months following Plaintiff's protected activity.

123. By way of example, on or about June 26, 2025, Defendant subjected Plaintiff to a hostile and intimidating meeting during which management pressured Plaintiff to admit "non-compliance" and referenced a "law enforcement background" in a coercive manner.

124. After Plaintiff filed her EEOC charge on June 23, 2025 and submitted her formal accommodation request on June 27, 2025, Defendant's retaliatory conduct intensified, culminating in the July 24, 2025 "executive decision" banning smart glasses "effective immediately," including Plaintiff's medically necessary device.

125. On or about August 2, 2025, Plaintiff was pulled aside from her assigned work location and pressured about prior protected communications, and when Plaintiff declined to answer questions regarding the July 24, 2025 meeting, Defendant's leader called her "rude."

126. On or about August 8, 2025, Defendant issued disciplinary action against Plaintiff even though Defendant acknowledged that no formal written policy existed prohibiting Plaintiff's medical device.

127. On or about August 10, 2025, during a meeting at the Contemporary Resort, Plaintiff was subjected to further intimidation related to her rights, including threats of termination and other coercive statements aimed at discouraging Plaintiff from pursuing legal remedies.

128. Defendant's pattern of retaliatory conduct continued through at least October 2025, including management's repeated focus on Plaintiff's accommodation situation, harassment, and conduct that further stigmatized Plaintiff in the workplace.

129. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions. The causal connection is demonstrated by temporal proximity and the escalating nature of Defendant's conduct following each instance of Plaintiff's protected activity,

including the EEOC filing and formal accommodation request.

130. Defendant's actions constitute unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203(a).

131. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages, including lost wages and benefits, emotional distress, and other losses, and Plaintiff continues to suffer such damages.

**WHEREFORE**, the Plaintiff, ANGELIZ E. BRUNO CEDENO, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA, 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff for engaging in protected activity under the ADA;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to,

front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to the ADA;

D. Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 7th day of January 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com